Carr, J.
The general question, whether any creditor at large can file a bill in equity against an executor, for an account of assets, and satisfaction of his claim, *514 was very much discussed at the bar. It is a question ^ of great importaface, never settled by any decision of this court j and I should regret exceedingly that we have , .. . ° ° J . . but a bare court, it it were necessary to act upon it m this case; but I do not thinlc it is necessary. The bill of sale,Af February 1783,'binds the parties, their heirs &c. jointly and severally. Philip Poindexter, by his will, charged his whole estate, real and personal, with the payment of his debts. The bill is filed against his real and personal representatives; it calls for a discovery of the personal assets, charges that they are insufficient to satisfy the claim, and prays, in case of such deficiency, a sale of the land. This makes the question of jurisdiction, to rest on ground very different from the general point discussed at the bar. A charge of this kind in a will, converts the real estate into equitable assets, which can be reached only by a bill in chancery; and in such a case, the door of equity is open to creditors of every description to come in and call for an execution of the trust. A suit at law to establish the debt, is never considered a necessary prerequisite to such bill. The books are full of cases of creditors at large, whether by bond, note or open account, coming into equity for satisfaction out of the land, where it is made equitable assets by the will. In such cases, it is proper to make the personal representatives parties also, that the personal fund, which is the natural one, for payment of debts, being before the court, proper inquiries may be made, and care taken, that so far as it will go, it shall be applied in ease of the real estate. I cannot think it worth while to cite cases for this every day doctrine and practice of the court.
But does it affect the right of coming into equity, that the claim sounds in damages ? Equity looks at the substance, not the forms, of things ? It is true, the claim sounds in damages; but it is for damages for the loss of property bought on a warranty of title, where there *515 is a clear standard by which to measure the claim. The plaintiff’s testator held certain slaves, which he had purchased upon the covenant of Poindexter to make good the title. These were taken from him by the decree of a court, under a prior lien, and they sold under the hammer, for 1940 dollars. Does it make any difference in equity, whether you call this damages, or by any other name ? Every action of assumpsit sounds in damages, yet equity constantly receives such creditors upon a bill for satisfaction out of equitable assets. I do not think there is any weight in this objection.
The next objection to the decree, is, that the life estate of Mary Green was not made to contribute. The testator gave to his wife all the estate that came by her, to do as she pleased with it, free of all incumbrances ; and then gave her all the rest of his estate, left after paying his debts, for life. It is compared to the case of an estate incumbered by a mortgage, which is given to A. for life, remainder to B. in fee; where the rule is, that A. shall keep down the accruing interest on the mortgage, even if it takes the whole of the rents and profits, and shall not be permitted to throw them upon the remainderman. The rule is unquestionably so; but I think the analogy fails entirely. The mortgage is a certain existing incumbrance fixed upon the land, carrying an annual interest. The testator knowing of this charge, gives the land to one for life, and to another in fee. “ As a question of intention,” says lord Thurlow, in Tracy v. Hereford, 2 Bro. G. C. 189. “the testator considered it as a fund to be divided, and that each tenant for life should leave the estate to his successor, in as good a condition as he found it; his intention was to give it subject to all reprizes; all reprizes must, therefore, be borne by each tenant, for life.” Again, in Ld. Penrhyn v. Hughes, 5 Ves. 107. lord Loughborough, after laying down the rule as perfectly settled, that tenant for life must keep down the accruing interest, says—“ The *516 ground is, that the estate in the hands of tenant for life, liable to incumbrances, is in the first place amesnable, and may be made so by an application by the reversioners, to all the interést accrued upon incumbrances prior to that estate for life. It is very hard, I admit. He may lose all his interest. But it must always be remembered, that both the tenant for life, and the incumbrancers, have a right to have the estate sold; and if so, then the tenant for life will have his interest in what remains of the money produced by the sale; and it will be divided, as the law provides, in the proportions their interests bear to the estate.” Where is the resemblance between such a case and the one before us ? The testator here, gives his estate to his wife for life, subject to his debts. If creditors sue and get judgments, of course, they must come out of the estate, and it may be, that this executrix paid many in this way. But the claim of the plaintiffs was one which Poindexter’s estate was not bound for, absolutely: he had warranted the title of the slaves sold by Maury: it was only in the event of that title proving bad, and the slaves being lost in consequence of the defect, that his estate would be liable; and this liability must be established by a suit. Until it was so established, the tenant for life, who was also executrix, was not called on to pay it, and would not have been justifiable in paying it. This did not happen in her lifetime. She was never, therefore, in default in this respect; never bound for the debt during her life; and of consequence, I think, her life estate cannot be called on to contribute, when, in after time, the claim was established. On her death, Baile, the surviving executor, qualified and took possession of Poindexter’s estate; and in his hands it is certainly liable, and the first fund to be applied in the discharge of Green’s claim.
I do not consider the accounts or reports at all before us, farther than merely to look at them on the subject of *517 the compound interest and other errors in detail; which, i 1 7 it was admitted, ought to be corrected.
The other judges concurred. Decree reversed with costs, for the acknowledged errors in the details, and a corrected decree for the appellees entered.